### ZITSERMAN v. FEDERAL TRADE COMMISSION.

#### No. 14533.

United States Court of Appeals,
Eighth Circuit.

Dec. 18, 1952.

F. W. James, Evanston, Ill., for petitioner.

John W. Carter, Jr., Atty. for Federal Trade Commission, Washington, D. C., (W. T. Kelley, Gen. Counsel, and Robert B. Dawkins, Asst. Gen. Counsel, Washington, D. C., on the brief), for respondent.

Before GARDNER, Chief Judge, and WOODROUGH and COLLET, Circuit Judges.

GARDNER, Chief Judge.

This is a petition to review a cease and desist order entered against petitioner by the Federal Trade Commission. The order was entered after hearing on complaint which alleged in substance that petitioner manufactured push cards and punchboards, selling and distributing them in interstate commerce to manufacturers of and dealers in various other articles of merchandise and that such push cards and punchboards are so prepared and arranged that when used in selling merchandise a game of chance, gift enterprise or lottery scheme is involved; that many persons, firms and corporations who distribute and sell merchandise in interstate commerce purchase petitioner's push cards and punchboards and pack and assemble assortments of merchandise with said push cards and punchboards; that retail dealers who purchase such assortments expose such assortments to the purchasing public and sell merchandise by means of petitioner's push cards and punchboards; that because of the element of chance involved, members of the purchasing public are induced to buy from such retail dealers and as a result many retail dealers have been induced to deal with manufacturers, wholesale dealers and jobbers who distribute merchandise together with petitioner's devices; that the sale of merchandise to the public by the use of such push cards and punchboards involved a game of chance to procure merchandise at less than normal retail prices; that the sale of merchandise by this method and means teaches and encourages gambling among members of the public, all to the injury of the public; that the sale of merchandise by chance or lottery is a practice which is contrary to the established public policy of the Government of the United States and constitutes unfair acts and practices in commerce; that by the sale of petitioner's push cards and punchboards petitioner supplies to and places in the hands of others the means of conducting lotteries, games of chance or gift enterprises in the sale or distribution of merchandise; that petitioner thus provides others with the means of and instrumentalities for engaging in unfair acts and practices in commerce in the sale of merchandise. The complaint also charged that said acts and practices of petitioner are all to the prejudice and injury of the public and constitute unfair acts and practices in commerce within the intent and meaning of the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq.

By answer petitioner put in issue all the allegations of the complaint.

Although the printed record contains no evidence, nor even a recital that evidence was introduced in support of the allegations of the complaint, it is admitted by counsel for petitioner in his brief that "after issues were joined the Commission held hearings." Neither does the printed record contain any evidence introduced or offered by the petitioner. The hearing examiner filed his initial decision which included findings of fact and conclusions of law and an order to cease and desist. The findings which are set out in detail in the printed record sustained all the

substantial allegations of the complaint and concluded that the petitioner's acts and practices as found constituted unfair acts and practices in commerce within the intent and meaning of the Federal Trade Commission Act. An order was entered which directed petitioner to cease and desist from "selling or distributing in commerce as 'commerce' is defined in the Federal Trade Commission Act, punchboards, push cards, or other lottery devices which are to be used, or which may be used, in the sale and distribution of merchandise to the public by means of a game of chance, gift enterprise or lottery scheme." Petitioner appealed to the Commission from the decision of the trial examiner and on hearing the decision of the trial examiner was affirmed and adopted as the decision of the Commission.

By her petition for review in this court petitioner asks that we review "the findings and order of the Federal Trade Commission in said cause and enter a decree in this honorable court setting aside the order of the Federal Trade Commission * * * ." In support of her petition she urges: (1) that the hearing granted her did not comply with the due process clause of the Constitution nor with the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., in that the trial examiner refused to grant the petitioner adequate hearings; (2) the Commission does not have jurisdiction to restrain the interstate shipment of push cards and punchboards; (3) the order issued is too broad; (4) the proceeding is not in the interest of the public as required by the Federal Trade Commission Act.

▮ Although petitioner seeks a review of the findings of the Commission, she has not included in the printed record any of the evidence confessedly introduced in support of the allegations of the complaint. In this situation the findings and conclusions are presumed to be sustained by the evidence and may not be reviewed here.

The contention that petitioner was not granted a fair hearing is bottomed on certain alleged rulings of the trial examiner rejecting petitioner's proffered evidence.

The evidence is not in the printed record and Rule 10(b) of this court among other things provides that, "If the appellant or petitioner in his brief challenges rulings upon evidence, such evidence, the objections interposed thereto, and the rulings questioned shall be quoted in the printed record, and if the question of the sufficiency of the evidence to support a finding, ruling, order, verdict or judgment of the court or board is raised by the appellant to petitioner, he shall include in the printed record (in narrative form) all evidence received upon the trial or hearing pertinent to that question." See Loughran v. Federal Trade Commission, 8 Cir., 143 F.2d 431. It is, however, urged by the petitioner that the record sufficiently reflects the ruling of the court on the admission of evidence because there is printed in the record, under the heading "Ruling," the following: "The Commission on appeal from the Trial Examiner's initial decision in upholding the Examiner's ruling that petitioner could not have hearings for the purpose of introducing evidence on the intrastate use of punch boards, ruled 'The Commission is of the opinion that the distribution in commerce of devices which aid and encourage merchandising by gambling is contrary to the interest of the public.' " As there is nothing in this ruling which reflects the circumstances under which the ruling of the examiner was made nor what, if any, evidence was offered, this record leaves much to conjecture and speculation. In the final analysis, however, we think the contention is substantially embodied in petitioner's argument to the effect that the Federal Trade Commission Act does not confer jurisdiction on the Commission to restrain transportation of the devices here in question in interstate commerce because the devices are used in connection with the sale of merchandise by chance or lottery in intrastate commerce. Unless petitioner's argument on this question is sound, then manifestly the ruling complained of which it is said denied her the right to make proof that the devices were ultimately to be used for the sale of merchandise only in intrastate commerce, could not be prejudicial.

The controversy is concerned with the sale and distribution of lottery devices. Petitioner in her brief admits the sale and distribution in interstate commerce of lottery devices and their use in the sale and distribution of merchandise, and, indeed, as that is the finding of the Commission it can not, in the condition of the record, be here challenged. This narrows the issue to the question as to whether or not the Commission is without jurisdiction if these devices though transported in interstate commerce are ultimately used in connection with the sale and distribution of merchandise only in intrastate commerce. It is broadly urged that the Commission has no jurisdiction over interstate shipments of lottery devices. In the recent case of Federal Trade Commission v. Raladam Company, 316 U.S. 149, 62 S.Ct. 966, 968, 86 L.Ed. 1336, it is among other things said:

"One of the objects of the Act creating the Federal Trade Commission was to prevent potential injury by stopping unfair methods of competition in their incipiency. * * *"

■■ It is now well settled by controlling decisions that the sale of goods by a plan or method which involves the use of a game of chance, gift enterprise, or lottery is a practice which is contrary to the established policy of the Government of the United States and violative of the Federal Trade Commission Act. It is equally well established that selling in interstate commerce the means or instrumentalities by which merchandise can or may be sold by games of chance, gift enterprise or lottery is an unfair method of competition. Placing in the hands of others the means of engaging in such acts or practices is contrary to the public policy and the public interest. The Commission found that the act prohibited by the order to cease and desist was the selling and distribution of lottery devices in interstate commerce and we think the act prohibited by the order is contrary to public policy of the United States Government. The questions have, we think, been conclusively determined against the contentions of the petitioner by a long list of decisions. Chas. A. Brewer & Sons v.

Federal Trade Commission, 6 Cir., 158 F.2d 74; Modernistic Candies v. Federal Trade Commission, 7 Cir., 145 F.2d 454; Federal Trade Commission v. F. A. Martoccio Co., 8 Cir., 87 F.2d 561; Lichtenstein v. Federal Trade Commission, 9 Cir., 194 F.2d 607, 609. In Lichtenstein v. Federal Trade Commission, supra, the court among other things said:

"Upon a review of the history of Section 5(a) in connection with the decisions of the court thereon, we are of the opinion that the petitioner's use of interstate commerce to ship these devices to be used in intrastate commerce in the gambling disposition of merchandise to the ultimate consumer is one of the 'unfair * * * practices in commerce' subject to the preventive control of the Commission."

Touching the question of public policy the court in Modernistic Candies v. Federal Trade Commission, supra [145 F.2d 455], among other things said:

"There may be in every child the impulse that prompts him to take a chance, but it has been the public teaching and the public policy of the land that gambling is immoral and to be condemned. The Federal Government has made it a criminal offense to transport lottery tickets or to cause them to be transported in interstate commerce. 18 U.S. C.A. § 387. Lotteries used in the marketing of merchandise have long been condemned by the Supreme Court and by this court. The cases are legion."

And again the court said:

"It is clear that the Federal Trade Commission has the power to eradicate merchandising by gambling in interstate commerce. We think the Commission also has the power to prohibit the distribution in interstate commerce of devices intended to aid and encourage merchandising by gambling. The gamblers and those who deliberately and designedly aid and abet them are both engaged in practices contrary to public policy. Merchandising by gambling should not be divided into

insulated acts, which appear innocent when examined separately. This unfair practice should be viewed as a whole. If the Federal Trade Commission is to police merchandising by gambling, it must police those who designedly and deliberately aid and abet this practice. We think the Commission has such power."

The case of Chas. A. Brewer & Sons v. Federal Trade Commission, supra, decided by the Court of Appeals for the Sixth Circuit, may be said to be on "all fours" with the instant case. The complaint in that case was substantially identical with that in the case at bar. The findings and the order were the same as are here involved and the same contentions of counsel for petitioner were made there as are urged here. These contentions are, we think, convincingly answered by the well considered opinion by Judge Martin which reviews all the pertinent authorities to the date of the opinion. After analyzing the Commission's findings the court said:

"* * * With deliberate intent, using channels of interstate commerce, they put into the hands of others, including manufacturers and wholesale and retail dealers, the means of using 'unfair methods of competition' and 'unfair or deceptive acts or practices.' Manufacturers and wholesale dealers who purchase their made-to-order punch boards and push cards frequently make up complete assortments of merchandise and boards or cards, which find their way into interstate commerce.

"For the reasons hereinafter appearing, we have reached the conclusion that, in thus aiding and abetting, inducing and procuring manufacturers and wholesale and retail dealers in merchandise to use unfair or deceptive acts or practices and unfair methods of competition, Charles A. Brewer and Son, though manufacturing no merchandise except the lottery devices which they ship in interstate commerce, fall within the restraining power of the Federal Trade Commission as vested by the Federal Trade Commission Act. 52 Stat. 111." [158 F.2d 77.]

As before observed, every argument urged upon us here was considered by the court in the Brewer case and counsel for petitioner frankly admits that if correct the decision in that case is conclusive against him. He contends, however, that the cases above cited, including the Brewer case, are in conflict with the decision of the Supreme Court in Federal Trade Commission v. Bunte Brothers, 312 U.S. 349, 61 S.Ct. 580, 85 L.Ed. 881. The Bunte case, however, is readily distinguishable in its facts from the instant case and this has been done for us by Judge Martin in his opinion in the Brewer case, where it is said:

"The case is plainly distinguishable from that at bar, in that, in the Bunte Brothers case, the sale of the petitioner's products was entirely within the State of Illinois. Here, the petitioners ship in interstate commerce throughout the United States their manufactured lottery devices."

The same view is expressed by the United States Court of Appeals for the Fourth Circuit in the recent case of Consolidated Manufacturing Company, v. Federal Trade Commission, 199 F.2d 417, 418, where it is said inter alia:

"No judge anywhere has expressed a contrary opinion and nothing to the contrary can be worked out arguendo from Federal Trade Commission v. Bunte Bros., 312 U.S. 349, 61 S.Ct. 580, 85 L.Ed. 881, which held merely that the Commission was without power over purely intrastate transactions."

It is finally urged that the order of the Commission is too broad. This contention was also urged in the Brewer case and in the Consolidated Manufacturing Company case. Both of those courts expressed the view that the order complained of was not too broad. In the last cited case the court said:

"We agree with the Court of Appeals of the Third Circuit * * * that the order complained of is not too broad and that, properly interpreted, it prohibits 'only the distribution in interstate commerce of any push card, punchboard or other device which is designed

to serve as an instrumentality for the sale of articles of merchandise by lottery methods.' "

We have given consideration to all other contentions of the petitioner and think they are wholly without merit.

The petition to review will be dismissed, and the cease and desist order of the Commission is affirmed and will be enforced.