Jonas **GERSON**, an Individual, Trading as Haven Company, Petitioner,

v.

**FEDERAL TRADE COMMISSION,** Respondent.

No. 14161.

United States Court of Appeals Seventh Circuit.

Nov. 20, 1963.

---

94

Lester P. Schwartz, Brooklyn, N. Y., Bennett E. Aron, Hempstead, N. Y., for petitioner.

J. B. Truly, Asst. Gen. Counsel, J. Lane Morthland, Atty., James McI. Henderson, Gen. Counsel, Federal Trade Commission, Washington, D. C., for respondent.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KILEY, Circuit Judges.

KILEY, Circuit Judge.

This is a petition to review and set aside an order of the Federal Trade Commission that petitioner Gerson cease and desist from merchandising by means of a "pull tab" device in violation of § 5 (a) of the Federal Trade Commission Act.[1]

The question is whether a sales practice violates § 5(a) of the Act where sales agents, compensated by premium gifts or commissions, solicit purchasers to "take a chance" by pulling one of twelve tabs, on the back of which is printed a symbol of an article corresponding exactly in price to one of the twelve articles listed elsewhere on the tab sheet, with no requirement that the article pulled be purchased, and with the purchaser able to purchase one of the articles directly instead of pulling a tab.[2]

The Commission adopted the Trial Examiner's findings that Gerson's practice was "obviously designed" for, and "normally used as" a gaming device; that the customers were "induced to 'take a chance'" thus indicating a prize; and that a device calculated to appeal to gambling instincts may be a violation of § 5 even though technically not a lottery. In support of the last finding the Commission relies on the rule in Modernistic Candies, Inc. v. Federal Trade Commission, 145 F.2d 454 (7th Cir. 1944), Seymour Sales Co. v. Federal Trade Commission, 94 U.S.App.D.C. 403, 216 F.2d 633 (1954), cert. denied, 348 U.S. 928, 75 S.Ct. 340, 99 L.Ed. 727 (1955), and the specially concurring opinion in Calvine Cotton Mills, Inc., 51 FTC 294 (1954).

■ There was substantial evidence to support a finding that the device was used as a gaming device: customers who were approached to "take a chance" would associate it with a lottery; and the device's use was the same as that of a punch

---

1. 66 Stat. 632 (1952), 15 U.S.C. § 45(a).

2. The details of the practice are admittedly "word for word, design for design" after those used in J. C. Martin Corp. v. Federal Trade Commission, 242 F.2d 530 (7th Cir. 1957). In fact, Gerson, although a resident of Brooklyn, New York, established his place of business in Chicago to take advantage of this court's decision in J. C. Martin.

board, if the explanatory note [3] were not read. It was conceded that the tabs were "a selling device," an "eye catcher" and were used "in a substantial number of cases."

We think J. C. Martin Corp. v. Federal Trade Commission, 7 Cir., 242 F.2d 530, decided by this court in 1957 is inapplicable. The decision there was that a practice similar to Gerson's was not a lottery, because the element of prize was missing. Nor are Wolf v. Federal Trade Commission, 135 F.2d 564 (7th Cir. 1943), Globe Cardboard Novelty Co. v. Federal Trade Commission, 192 F.2d 444 (3rd Cir. 1951), nor Colon v. Federal Trade Commission, 193 F.2d 179 (2d Cir. 1952), cert. denied, 344 U.S. 823, 73 S.Ct. 22, 97 L.Ed. 641 (1952), close on the facts here in the absence of a valid, necessary finding that Gerson's device was a lottery or a game of chance. They are, however, authority for recognition of the "public policy" of the United States against marketing goods by taking advantage of the consumer's propensity to take a chance.

We think this court's opinion in Modernistic Candies, Inc. v. Federal Trade Commission, 145 F.2d 454 (7th Cir. 1944), is the closest of the cases cited on the facts. There the "article sold [was] not complete in itself" for a game of chance, but the merchant using it "would give a prize * * * stick of candy or a candy bar" to the children or *adults* using the innocent per se device. This court referred, in that case, to the power of the Commission to police and prohibit the use of devices in interstate commerce which designedly and deliberately aided and encouraged merchandising by gambling. It thought Modernistic's device "too apparently allied" with a practice contrary to public policy to qualify as a "fair trade practice" and denied petition to review. This court emphasized the special appeal of the device to the weakness of children desiring to "get something for nothing." But this emphasis does not distinguish the device there from the one at bar: actually adults there were equally attracted to the device.

The Commission was justified in adopting the finding that the sales device was used as a gaming device "calculated to appeal to the public's gambling instincts." The Commission could as well have found with propriety, on Gerson's own argument that the element of chance was missing, that in any event, if the device were not used as a gaming device, Gerson, through his agents, held it out as such and thereby practiced a deception upon naive customers who were deluded into "taking a chance." It is our opinion that the complaint [4] could accommodate a conclusion, and there was substantial evidence upon which the Commission could conclude, upon either ground, that Gerson's sales practice was unfair and in violation of § 5(a) of the Act.

We have considered but find no merit in Gerson's challenge to the breadth of the order's restraint against the practice employing devices "designed or intended to be used" in selling "by means of a game of chance * * *."

For the reasons given, the petition is denied and the Commission's order will be enforced.

SCHNACKENBERG, Circuit Judge (concurring).

Despite the evident purpose of petitioner to create a device not proscribed

3. "Here's how it works. You may purchase from the list shown on the left where the merchandise is described or you may pull any one of the slips below on the back of which is printed the article and price. If not satisfied with the item you picked you are not obligated to buy it. * * *"

4. "The sale of merchandise by the aforesaid method also constitutes the sale of merchandise by means of a gaming device * * *.

"The use by respondent of the aforesaid sales plan in connection with the sale of his merchandise is a practice which is contrary to established public policy of the Government of the United States * * *."

by law, it is apparent that the over-all effect of the evidence establishes that he intended to incite the gambling instinct rather than the purchasing desire of a customer. This result he reached and hence Judge Kiley's disposition of this appeal is right.